# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 22-2230

KATIE SCZESNY, JAMIE RUMFIELD, DEBRA HAGEN, and MARIETTE VITTI,

*Plaintiffs-Appellants*

v.

THE STATE OF NEW JERSEY, GOVERNOR PHILIP MURPHY (in his official and personal capacities),

*Defendants-Appellees*,

On appeal from No. 3-22-cv-02314 in the United States District Court of New Jersey's denial of a preliminary injunction pursuant to *Fed. R. Civ. P.* 65

# NATION IN ACTION'S UNOPPOSED AMENDED MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF

## IN SUPPORT OF PLAINTIFFS-APPELLANTS FOR REVERSAL OF DISTRICT COURT'S ORDER APPLYING RATIONAL BASIS REVIEW IN DUE PROCESS CHALLENGE TO COVID-19 INJECTION MANDATES

Deana Pollard Sacks
CA Bar No. 145192
Sacks Law Firm
2323 S. Shepherd Drive, Suite 825
Houston, Texas 77019
Telephone: 713.927.9935
deanapollardsacks@icloud.com
Attorney for Amicus Curiae

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ................................................................. iii

GROUNDS AND RELIEF SOUGHT ....................................................1

ARGUMENT ...........................................................................................2

    1.    Amicus Curiae Counsel Has Expertise In Liberty Clause Analysis That Will Aid The Third Circuit In Its Constitutional Analysis ...........2

    2.    The Constitutional Issues Are Complex And Permitting Amicus Curiae Additional Brief Length Would Be Beneficial To The Third Circuit ....................................................................................................4

    3.    The Gravity Of The District Court's Error In Applying Rational Basis Review ........................................................................................6

        a.    Lack of Due Process at the Front End .......................................9

        b.    Lack of Due Process at the Back End ......................................10

CONCLUSION .......................................................................................12

COMBINED CERTIFICATIONS .........................................................14

CERTIFICATE OF CONFERENCE.....................................................15

CERTIFICATE OF SERVICE ..............................................................16

DECLARATION OF DEANA POLLARD SACKS

    EXHIBIT 1: Correspondence Used for Certificate of Conference.......................................................Exhibit 1

    EXHIBIT 2: Curriculum Vitae...............................................Exhibit 2

# <u>TABLE OF AUTHORITIES</u>

## United States Supreme Court

*Biden v. Missouri*, 142 S. Ct. 647 2022 (Thomas, J., dissenting)...........................11

*National Federation of Independent Businesses v. OSHA*, 142 S. Ct. 661 (2022) .....................................................................................................................9

*Washington v. Glucksberg,* 521 U.S. 702 (1997) .......................................................4

## Third Circuit Court of Appeals

*ACLU v. Mukasey*, 534 F.3d 181 (3rd Cir. 2008).......................................................7

*Neonatology Associates, P.A. v. Commissioner of Internal Revenue John J. and Ophelia J. Mall, et al.*, 293 F.3d. 128 (3rd Cir. 2002)....................................3

## Other Courts

*Andre-Rodney v. Hochul*, 569 F.3d 128 (N.D.N.Y. 2021) ........................................7

*Compassion in Dying v. Washington*, 85 F.3d 1440 (9th Cir. 1996)........................6

*Sczesny v. New Jersey*, No. 3-22-cv-02314, Doc. 19, p. 12 (D.N.J. June 6, 2022) ...............................................................................................................6, 8

## Rules

Federal Rule of Appellate Procedure 29................................................................1, 2

## Other Authorities

Blackman, Josh, *The Irrepressible Myth of Jacobson v. Massachusetts*, 70 Buff. L. Rev. 131 (2022)..............................................................................8, 12

Sacks, Deana Pollard, *Elements of Liberty*, 61 SMU L. REV. 1557 (2008)...............5

Sacks, Deana Pollard, *Judicial Protection of Medical Liberty*, 49 FLA. ST. UNIV. L. REV. 515 (2022)........................................................................................9

## **GROUNDS AND RELIEF SOUGHT**

Amicus Curiae Nations in Action requests leave to file an Amicus Brief in support of Plaintiffs-Appellants pursuant to Federal Rule of Appellate Procedure 29. The Defendants do not oppose the request.[1]

Amicus Curiae provides authority to the Third Circuit that the proper standard of judicial review in a Liberty Clause challenge to a COVID-19 injection mandate is strict scrutiny because the right to reject medical procedures is fundamental. Fundamental rights analysis under United States Supreme Court precedent is complex and has been inconsistent over the past century. Counsel for Amicus Curiae is a former law professor with expertise in Liberty Clause jurisprudence. Amicus Curiae seek to file the Amicus Brief to support the Third Circuit in its fundamental rights analysis.

Nations in Action also seeks an order permitting Amicus Curiae to file an Amicus Brief that exceeds the usual length limit of 15 page/6500 words due to the complex constitutional issues involved in fundamental rights analysis and the necessary detail concerning the "history and tradition" of the constitutional right asserted by the Plaintiffs-Appellants. *See* Federal Rule of Appellate Procedure 29(a)(5) (maximum length of amicus brief may be extended with the "court's

---

[1] See Declaration of Deana Pollard Sacks, para 4, Exhibit 1 (response from defense counsel that defendants do not object to the Amicus Brief filing).

permission."). Amicus Curiae seek to file an Amicus Brief that contains 10,416 words.

Nations in Action further seeks an order allowing Amicus Curiae attorney Deana Pollard Sacks to be heard orally at the hearing of this matter. *See* Federal Rule of Appellate Procedure 29(a)(8) (the court may permit an Amicus Curiae to participate in oral argument). Counsel for Amicus Curiae is a constitutional law and tort law scholar and is prepared to answer common law (tort) and constitutional questions concerning the history of the right of bodily autonomy.

## **ARGUMENT**

1. Amicus Curiae Counsel Has Expertise In Liberty Clause Analysis That Will Aid The Third Circuit In Its Constitutional Analysis

Plaintiffs-Appellants seek an order that the COVID-19 injection mandates at issue in this case ("Mandates") infringe their fundamental right to reject medical procedures implicit in the liberty aspect of the Due Process Clause, also known as the Liberty Clause.[2] The District Court erroneously applied rational basis review as the test for the constitutionality of the Mandates.

Amicus Curiae asserts that the error was a result of an incomplete fundamental rights analysis. The District Court did not analyze the history and

---

[2] Plaintiffs-Appellants assert other claims as well. Amicus Curiae's focus is on the Liberty Clause challenge.

tradition of the right of bodily autonomy consistent with the United States Supreme Court's Liberty Clause jurisprudence as well as English and American common law, which have fiercely protected the right of bodily autonomy for centuries. Analyzing the history and evolution of an asserted constitutional right is critical to a proper fundamental rights analysis. Amicus Curiae offer the attached Amicus Brief to support the Third Circuit in determining the fundamental rights question and applying the proper standard of review, strict scrutiny.

Amicus Curiae has expertise in Liberty Clause jurisprudence and the history of legal protection of bodily autonomy. Amicus Curiae counsel was a law professor for twenty years, taught constitutional law and tort law, and has published numerous law review articles concerning the right of bodily autonomy and individual rights implicit in the Liberty Clause. She has also published numerous items concerning the law of battery and informed consent. *See* Declaration of Deana Pollard Sacks, para.6, Exhibit 3 (*curriculum vitae*).

"Some friends of the court are entities with particular expertise not possessed by any party to the case . . . . Accordingly, denying motions for leave to file an amicus brief whenever the party supported is adequately represented would in some instances deprive the court of valuable assistance." *Neonatology Associates, P.A. v. Commissioner of Internal Revenue John J. and Ophelia J. Mall, et al.*, 293 F.3d. 128, 132 (3rd Cir. 2002) (rejecting argument that amicus curiae seeking leave to file an amicus brief must show that the party to be supported is

inadequately represented). In this case Amicus Curiae offer an historical perspective on the Liberty Clause and predecessor laws dating back centuries to provide the court with a full and complete picture of the history and tradition of the personal and constitutional right to control who touches one's own body. The Amicus Brief supports and aids the Third Circuit's constitutional decision-making process and should be considered.

2.  The Constitutional Issues Are Complex And Permitting Amicus Curiae Additional Brief Length Would Be Beneficial To The Third Circuit

In analyzing whether a liberty interest is a fundamental right, the Supreme Court begins by reviewing the history and tradition of the asserted right: "We begin, as we do in all due process cases, by examining our Nation's history, legal traditions, and practices." *Washington v. Glucksberg,* 521 U.S. 702, 710 (1997). The question is whether the asserted liberty right is "deeply rooted in this Nation's history and tradition." *Moore v. East Cleveland,* 431 U.S. 494, 503 (1977) (citations omitted). Fundamental rights precedent often entails a detailed historical analysis of the asserted constitutional right, contextualized with other laws that shed light on the contours of the asserted constitutional right. *See, e.g., Washington v. Glucksberg,* 521 U.S. at 710-716 (providing historical background on euthanasia to show that it is not entrenched and therefore not a fundamental right, and to the contrary, euthanasia was unlawful throughout most of history).

Fundamental rights analysis is very challenging. The Supreme Court's Liberty Clause jurisprudence has been remarkably inconsistent and has endured scholarly criticism as judicial "activism" based on the personal views of the nine Justices.[3] The issues in this case are complicated and require careful fundamental rights analysis to arrive at the correct judicial standard of review. Fundamental rights analysis requires an investigation into the history and tradition of the claimed right and a synthesized review of the precedent. Amicus Curiae seeks to file the Amicus Brief to provide the Third Circuit with historical precedent and other authority in support of Plaintiffs'-Appellants' position that they have a fundamental right to reject the injections required by the Mandates and that their challenge to the Mandates should be reviewed with judicial strict scrutiny.

The right of bodily integrity has been viewed as "absolute," "fundamental," and "inviolable," *inter alia*, for centuries under English and American common law as described in the Amicus Brief. This longstanding and historical right to be let alone spawned the right to reject medical treatment and the doctrine of informed consent. "The right to refuse medical treatment is grounded in the common law

---

[3] The Supreme Court's opinions have been referred to by constitutional scholars as "willy nilly" and the result of the Supreme Court acting as a "naked power organ" due to the inconsistencies. *See, e.g.,* Deana Pollard Sacks, *Elements of Liberty*, 61 SMU L. REV. 1557, 1559-1561 (2008) (discussing the lack of an interpretive method that has led to inconsistent due process opinions and suggesting a multi-faceted interpretive method derived from Supreme Court precedent).

right to be free of unwanted bodily contact." *Compassion in Dying v. Washington*, 85 F.3d 1440, 1444 (9th Cir. 1996) (O'Scannlain, J., dissenting from the order rejecting a request for rehearing en banc; certiorari granted and the 9th Circuit's opinion was reversed by the Supreme Court in *Washington v. Glucksberg*). A complete historical background is critical for the Third Circuit to conduct a meaningful and accurate review of the liberty interest at stake in this case. The proffered Amicus Brief contains a detailed history of English and American common law as well as Liberty Clause jurisprudence to support the Third Circuit's constitutional analysis. Amicus Curiae request an extension of the usual page limit to accommodate the historical chronology presented, which spans over 500 years.

3. The Gravity Of The District Court's Error In Applying Rational Basis Review

The District Court found that *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) adopted rational basis review relative to a smallpox law at the turn of the century that imposed a $5.00 fine for noncompliance despite the fact that *Jacobson* was decided decades before tiers of judicial review were created by the Supreme Court. The District Court also found that *Jacobson* controls the standard of judicial review relative to the challenged Mandates and applied rational basis review in the instant case. *See* Opinion, *Sczesny v. New Jersey*, No. 3-22-cv-02314, Doc. 19, p. 12 (D.N.J. June 6, 2022) ["the Court finds that Jacobson and rational basis review apply to the Executive Orders. . . ."].

Amicus Curiae asserts that the instant case is entirely distinguishable from *Jacobson*, that the *Jacobson* Court did not apply the very deferential rational basis review standard as it has developed post-*Jacobson*, and that the *Jacobson* Court **specifically limited the case to its facts** *to avoid its application to very different social and medical facts such as those in the instant case. See* Amicus Brief, attached as Exhibit 2 to the Declaration of Deana Pollard Sacks, filed herewith.

The level of judicial scrutiny applied in Liberty Clause challenges to government action is critical and largely determines the outcome of the case. Rational basis review is a "highly deferential review which presumes that a law is constitutional," and the "burden is on the challenger to negate every conceivable basis which might support the law."[4]   Strict scrutiny shifts the burden of proof: Under strict scrutiny, the government has the burden of proving: 1) a compelling government purpose; 2) the law is narrowly tailored to achieve the compelling government purpose; and 3) no less restrictive means are available to meet the government's objective.[5]  In Liberty Clause challenges to government action, strict scrutiny is the undisputed standard when fundamental rights are infringed.

The District Court erred by finding no fundamental right to reject medical procedures (the COVID-19 injections at issue herein) and relying on lower court

---

[4] *Andre-Rodney v. Hochul*, 569 F.3d 128, 135 (N.D.N.Y. 2021) (emphasis added).

[5] *See, e.g., ACLU v. Mukasey*, 534 F.3d 181, 190 (3rd Cir. 2008).

opinions that similarly applied the wrong standard of review in other challenges to COVID-19 injection mandates. *See* Opinion, *Sczesny*, No. 3-22-cv-02314, [Doc. 19, pp. 17-18](#). *See also,* Josh Blackman, [*The Irrepressible Myth of Jacobson v. Massachusetts*](#), 70 Buff. L. Rev. 131, 190 (2022) (demonstrating how lower courts have made factually false statements and engaged weak or indefensible legal analysis in challenges to COVID-19 injection mandates).   By applying the erroneous and very deferential standard of rational basis review, numerous lower courts have sidestepped meaningful judicial review of COVID-19 injection mandates.  The District Court made a common error.

It is the duty of the judicial branch to protect individual constitutional rights from other branches' oppression and overreaching and the judicial branch is the final arbiter of constitutional rights.  The public's need for judicial protection has never been greater considering the many constitutional red flags surrounding the promulgation and highly coercive enforcement of COVID-19 injection mandates.  Lower courts have erroneously deferred to irregular and highly coercive medical mandates such as the Mandates involved in this matter.  Amicus Curiae asks the Third Circuit to correct the error and to offer meaningful judicial protection of the *fundamental right* to reject medical procedures consistent with a very long history and tradition of protecting individuals from unwanted physical contact.

a.    <u>Lack of Due Process at the Front End</u>

The manner in which COVID-19 injection mandates were promulgated is unprecedented.  Prior to COVID-19, virtually all vaccine laws were passed in the <u>normal</u> course of state legislative processes, which routinely include public notice, opportunity to object, debate, and a legislative vote subject to public scrutiny.[6] Yet, COVID-19 injection mandates lack the ***basic due process necessary to protect the public from government overreaching such as notice, opportunity to be heard, public debate, and legislative fact-finding; these protections were eliminated by <u>unchecked</u> rulemaking power that was triggered by declaring that COVID-19 is a public emergency.*** *See, e.g.,* [*National Federation of Independent Businesses v. OSHA*](#), 142 S. Ct. 661, 663 (2022) (noting that OSHA's "emergency temporary standards" bypass the usual rulemaking process that requires "rigorous" procedures including notice, comment, and an opportunity for a public hearing.).

The declared COVID-19 "emergency" arguably allowed for expedited promulgation of medical mandates <u>by the executive branch and even administrative agencies</u> and departed from the long history of state legislative jurisdiction over health policy arising from the states' police powers secured by the

---

[6] The legislative authority sometimes was delegated to boards of health or public schools. *See, e.g.*, Deana Pollard Sacks, [*Judicial Protection of Medical Liberty,*](#) 49 FLA. ST. UNIV. L. REV. 515 (2022) (reviewing many challenges to state vaccine laws and the impact of the National Childhood Vaccine Injury Act of 1986).

10th Amendment. The sudden shift in the power to issue ***medical mandates requiring Americans to submit to <u>experimental</u> medication*** was extraordinary and bypassed procedural protections at the promulgation stage. These facts render careful judicial review of constitutional challenges to the medical mandates especially critical as a much-needed check on other branches' conduct. And yet, judicial review at the back end has been missing because lower courts have adopted rational basis review without conducting a meaningful and complete fundamental rights analysis of the interests infringed by the COVID-19 injection mandates.

b.    <u>Lack of Due Process at the Back End</u>

Lower courts have failed to provide a critical check on the government by applying the very deferential rational basis review in liberty challenges to COVID-19 injection mandates. The lower courts have thus created a **back-end lack of due process** which, in conjunction with the front-end lack of due process, has subjected many millions of Americans to COVID-10 injection mandates with ***no meaningful constitutional protection whatsoever***.

The Supreme Court has not reviewed a substantive challenge to COVID-19 injection mandates such as that presented in the instant case. Justice Thomas clarified that the Supreme Court has not reviewed the "efficacy or importance" of the COVID-19 "vaccines" to make clear that the non-delegation cases heard by the Court did not address the substantive constitutional issues such as those presented

in the instant case. *See Biden v. Missouri*, 142 S. Ct. 647, 658 2022 (Thomas, J., dissenting) ("These cases are not about the efficacy or importance of the COVID-19 vaccines.  They are only about whether CMS has the statutory authority to force healthcare workers, by coercing their employers, to undergo a medical procedure they do not want and cannot undo.")  No court has conducted a careful review to assure that the American people are protected from unsafe, inefficacious, or dangerous experimental medical mandates or that there are no less intrusive alternatives to the coerced injections.  No court has even conducted a thorough fundamental rights analysis to determine the type of interest infringed by the COVID-19 mandates, and no court has reached the correct conclusion that strict scrutiny is the proper standard of review.

Without meaningful judicial review as a result of lower courts erroneously applying rational basis review, COVID-19 injection mandates have been forced upon many millions of Americans under threat of losing their financial stability and ability to feed their families.  The lower courts' error in adopting the wrong standard of review arose from a lack of meaningful fundamental rights analysis concerning the claimed right to reject medical procedures including unwanted

injections.[7]

The error must be corrected.  The Mandates at issue infringe the historical and entrenched fundamental right of bodily integrity and are subject to strict scrutiny.  The Third Circuit should allow the Amicus Brief to be filed in support of the constitutional analysis necessary to resolve the fundamental rights issue correctly and consistent with a very long history and tradition of fiercely protecting each individual's right to decide whether or not to be touched, including whether or not to inject his or her body with medication.

## **CONCLUSION**

The constitutionality of the coercive and irregularly promulgated Mandates at issue in this case should be scrutinized carefully by the judiciary.  The Mandates infringe a centuries-old right to bodily autonomy that has been considered absolute or fundamental throughout history, under English and American common law and

---

[7] Amicus Curiae is aware of no lower court opinion that has fully analyzed the history of the right to reject medical procedures based on English common law, American common law, and the Constitution to determine the proper level of scrutiny in COVID-19 injection mandates challenges.  To the contrary, the analysis has been shallow and deferential and courts have blindly followed one another in misinterpreting *Jacobson* terribly.  *See, e.g.,* Josh Blackman, *The Irrepressible Myth of Jacobson v. Massachusetts*, 70 Buff. L. Rev. 131, 190 (2022) (demonstrating how lower courts have made factually false statements and engaged indefensible legal analysis in challenges to COVID-19 injection mandates).

the American Constitution.  Particularly considering the failure of due process at the promulgation stage, careful judicial review of the medical facts, including safety, efficacy, and the availability of less invasive and intrusive alternatives to meet the government's purported goals, is necessary to uphold constitutional values.  The government must bear the burden of proof anytime the government seeks to inject individuals with unwanted, experimental medication.  Strict scrutiny is the proper level of judicial review.

The District Court's adoption of rational basis review of the Mandates challenged in this case should be reversed and the Third Circuit should declare that the Mandates infringe the fundamental right of bodily autonomy.  Accordingly, the Third Circuit should declare that strict scrutiny is the proper standard of judicial review of the Mandates.  Amicus Curiae respectfully asks the Third Circuit to consider the Amicus Brief as part of its constitutional review.

September 19, 2022                              Respectfully submitted,

BY:  **/s/ Deana Pollard Sacks**
DEANA POLLARD SACKS, ESQ.
CA Bar No. 145192
Sacks Law Firm
2323 S. Shepherd Drive, Suite 825
Houston, Texas 77019
Telephone: 713.927.9935
deanapollardsacks@icloud.com
Attorney for Amicus Curiae

## <u>COMBINED CERTIFICATIONS</u>

I, Deana Pollard Sacks, counsel for Amicus Curiae Nations in Action supporting Plaintiffs/Appellants hereby certify as follows:

1)  I am a member of the bars of the United States Supreme Court, the Fifth Circuit, California, and Washington (presently inactive in Washington by choice);

2)  I became a member of the bar of the Third Circuit Court of Appeals on September 7, 2022.

3)  The motion complies with the format, word count, typeface, and other requirements set forth in Federal Rules of Appellate Procedure 27, 32.  The word count of this electronic motion is 2918 words and is typed in Times New Roman font, 14-point type.

4)  This motion will be served on all parties contemporaneously by filing with ECF;

5)  The electronic motion and paper copies of the motion are identical;

6)  This motion was scanned with Trend Micro Security Agent, and no virus was detected.

September 19, 2022                          Respectfully submitted,

                                   BY:  **/s/ Deana Pollard Sacks**
                                        DEANA POLLARD SACKS, ESQ.
                                        CA Bar No. 145192
                                        Sacks Law Firm
                                        2323 S. Shepherd Drive, Suite 825
                                        Houston, Texas 77019
                                        Telephone: 713.927.9935
                                        deanapollardsacks@icloud.com
                                        Attorney for Amicus Curiae


## CERTIFICATE OF CONFERENCE

I hereby certify that I have communicated with Daniel M. Vannella, Assistant Attorney General, counsel for Appellees, the State of New Jersey and Phil Murphy, in his official and personal capacity. On August 15, 2022, his email response indicated that he is not opposed to this motion. The Appellant's counsel, Dana Wefer, has also informed me that she is not opposed to this motion.

September 19, 2022                          Respectfully submitted,

                                   BY:  **/s/ Deana Pollard Sacks**
                                        DEANA POLLARD SACKS, ESQ.
                                        CA Bar No. 145192
                                        Sacks Law Firm
                                        2323 S. Shepherd Drive, Suite 825
                                        Houston, Texas 77019
                                        Telephone: 713.927.9935
                                        deanapollardsacks@icloud.com
                                        Attorney for Amicus Curiae

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I filed Nations in Action's Unopposed Amended Motion for Leave to File Amicus Curiae Brief with the Clerk of the Court for the Third Circuit of the United States Court of Appeals using the Appellate CM/ECF system, which will automatically serve electronic copies upon all counsel of record.

September 19, 2022                    Respectfully submitted,


                                     BY:  **/s/ Deana Pollard Sacks**
                                          DEANA POLLARD SACKS, ESQ.
                                          CA Bar No. 145192
                                          Sacks Law Firm
                                          2323 S. Shepherd Drive, Suite 825
                                          Houston, Texas 77019
                                          Telephone: 713.927.9935
                                          deanapollardsacks@icloud.com
                                          Attorney for Amicus Curiae

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| **Katie Sczesny, Jamie Rumfield, Debra** § | | |
| **Hagen, And Mariette Vitti,** § | | |
| *Appellants* § | | |
| **v.** § | **Civil Appeal No. 22-2230** | |
| § | | |
| **The State of New Jersey, Governor** § | On appeal from the United States | |
| **Philip Murphy (in his official and** § | District Court of New Jersey No. | |
| **personal capacities),** § | 3-22-cv-02314 | |
| *Appellees* § | | |

## <u>DECLARATION OF DEANA POLLARD SACKS</u>

I, Deana Pollard Sacks, declare as follows:

1.     I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently to the facts.  All exhibits attached hereto are true and correct copies.

2.     I am counsel for Amicus Curiae, Nations in Action, in this case, *Sczensy et al. v. State of New Jersey et al.*, Third Circuit case number 22-2230.

3.     The instant appeal is taken from an order of the United States District Court of New Jersey, civil case number 22-2314 (GC) (Pacer case number 3:22-cv-02314-GC-RLS) entered on June 7, 2022 (Pacer document number 19).

4.     On August 10, 2022 I made a request via email for Mr. Daniel M. Vannella, Assistant Attorney General representing defendants in this matter, to agree to allow Nations in Action to file an Amicus Brief pursuant to Federal Rule

of Appellate Procedure 29. On August 15, 2022, Mr. Vannella responded by email that, "Defendants do not object to you seeking leave to appear as amicus in the Third Circuit appeal." A true and correct copy of the email exchange is attached as Exhibit 1 hereto.

5. A true and correct copy of the Amicus Brief I seek to file in this case is being filed contemporaneously with the filing of this Unopposed Motion for Leave to file Amicus Curiae Brief.

6. I have researched and published legal scholarship concerning the Liberty Clause and tort doctrine since 1989. I was a professor of law and taught torts and constitutional law from 2000-2020. A true and correct copy of my curriculum vitae is attached hereto as Exhibit 3.

7. I became an active member of the Third Circuit bar on September 7, 2022.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on September 17, 2022.

_Deana Pollard Sacks_
Deana Pollard Sacks

## EXHIBIT 1:

### Correspondence Used for Certificate of Conference

**From:** Daniel Vannella <Daniel.Vannella@law.njoag.gov>
**Subject: Re: [EXTERNAL] Will you provide permission for Nations in Action to file an amicus brief in Sczesny et al. v. State of New Jersey et al?**
**Date:** August 15, 2022 at 1:24:57 PM PDT
**To:** Deana Sacks <deanapollardsacks@icloud.com>

Hello,

Defendants do not object to you seeking leave to appear as amicus in the Third Circuit appeal.


**Daniel M. Vannella**
Assistant Attorney General
Litigation Practice Group
Division of Law
25 Market St. | P.O. Box 112
Trenton, N.J. 08625
t: 609-376-2776

---

**From:** Deana Sacks <deanapollardsacks@icloud.com>
**Sent:** Wednesday, August 10, 2022 5:36 PM
**To:** Daniel Vannella <Daniel.Vannella@law.njoag.gov>
**Cc:** Dana Wefer NJ Lawyer <dana@weferlawoffices.com>
**Subject:** [EXTERNAL] Will you provide permission for Nations in Action to file an amicus brief in Sczesny et al. v. State of New Jersey et al?

Hello. I am an attorney working for Nations in Action, a non-profit group dedicated to assuring that the Constitution is enforced.

We would like your permission to file an amicus brief in the above-referenced action, to avoid filing a motion for the court's permission.

Will you agree to allow us to file the amicus brief?

EXHIBIT 1
TO DECLARATION OF DEANA POLLARD SACKS                Page 1

Thank you,

Deana Sacks

310.728.0336 - California cell
713.927.9935 - Texas cell
713.863.0502 - facsimile

DeanaPollardSacks@iCloud.com

View my academic publications at
https://urldefense.com/v3/__http://ssrn.com/author=507918__;!!J30X0ZrnC
1oQtbA!LVIFcCDnNQzsZpp6T30dwnO7h2u3X2ngVT9IroPfFQ4WNSpquB
biw4zMLxeHsQluPpfu5CtWUoQLuDy__6fnIOvENplAvgFVKeaj7Q$  [ssrn[.]
com].

EXHIBIT 1
TO DECLARATION OF DEANA POLLARD SACKS                    Page 2

**EXHIBIT 2**:  Curriculum Vitae

Deana Pollard Sacks
2323 S. Shepherd Dr. #825
Houston, Texas 77019
deanapollardsacks@icloud.com
713.927.9935

**EDUCATION**

University of California, Berkeley, LL.M. May 1999.
All honors and high honors grades. Grade point average: 4.1/4.0.
Emphasis:  Employment Discrimination, Critical Race Theory, Sexual Harassment, Mediation, Trial Advocacy
Thesis on implicit racial bias published, *see* 74 WASHINGTON LAW REVIEW 913-1032 (1999).

University of Southern California, J.D. May 1989.Merit Scholarship.
Order of the Coif.  Top 2% second and third years.
Emphasis: Constitutional Law, Torts.
Research Assistant to Erwin Chemerinsky.
Senior thesis on regulating violent pornography published, *see* 43 VANDERBILT LAW REVIEW 125-159 (1990).

University of Washington, B.A., English Literature. June 1986.

**MAJOR PUBLICATIONS**

*Judicial Protection of Medical Liberty,* 49 FLA. ST. U. L. REV. 515 (2022).

SEX TORTS (forthcoming, tentative title). This book reviews the history of sex regulation and legal norms with a focus on civil liability for sexual assault and other sexual misconduct.  It analyzes sexual culture and the rapid changes to the law resulting from the #MeToo and #TimesUp social movements. The problems with legal doctrine and the legal system itself are analyzed in detail, and reform is suggested by reference to progressive American and international consent analysis and rape doctrine. The last chapter proposes a civil remedy for children against pornographers, who are

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                                          Page 1

known to target children online. Foreword by Dean Erwin Chemerinsky, U.C. Berkeley School of Law.

THE GODFATHERS OF SEX ABUSE, BOOK II: HARVEY WEINSTEIN & BILL COSBY (2020). In the second GODFATHERS book, Harvey Weinstein's and Bill Cosby's modi operandi are dissected, focusing on the similarities to Jeffrey Epstein's modus operandi. Many of the same famous lawyers and trusted prosecutors played a role in aiding these men as in Jeffrey Epstein's case. In a third part, The Penumbras of #MeToo, the intersection of race, misogyny, and youth in the rape equation are analyzed. In the end, reform to information systems is suggested, along with proposed proactive collective and individual action, to further the goal of sexual free will for all.

THE GODFATHERS OF SEX ABUSE, BOOK I: JEFFREY EPSTEIN (2019). Jeffrey Epstein's rise to incredible fortune, his elaborate Ponzi-style international sex-trafficking operations, and his reported death by suicide hanging are detailed in this first of a series of books about how rich and powerful men have been immunized from consequences for their sex crimes for decades. The many layers of enablers, including trusted prosecutors, are identified, as are the components of a compromised judicial system that creates one justice system for the rich and one for the rest of us.

*Supreme Court Decision on Violent Video Games Was Based on the First Amendment, Not Scientific Evidence,* AMERICAN PSYCHOLOGIST, with Brad Bushman (April 2014).

*Constitutionalized Negligence,* 89 WASHINGTON UNIVERSITY LAW REVIEW 1065 (2012).

*Implicit Bias-Motivated Torts,* in IMPLICIT RACIAL BIAS ACROSS THE LAW, Justin Levinson & Rob Smith, editors. (Cambridge University Press, 2012).

*Do Violent Video Games Harm Children? Comparing the Scientific Amicus Curiae "Experts" in Schwarzenegger v. Entertainment Merchants Association,* 106 NORTHWESTERN UNIVERSITY LAW REVIEW COLLOQUY 1, with Brad Bushman and Craig Anderson (2011).

*Snyder v. Phelps: A Slice of the Facts and Half an Opinion,* 2011 CARDOZO LAW REVIEW DE NOVO 64.

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                                    Page 2

*Children's Developmental Vulnerability and the Roberts Court's Child-Protective Jurisprudence: An Emerging Trend?* 40 STETSON LAW REVIEW 777 (2011) (symposium).

*Snyder v. Phelps, the Supreme Court's Speech-Tort Jurisprudence, and Normative Considerations*, 120 YALE LAW JOURNAL ONLINE 193 (2010) (Feature Essay).

*Snyder v. Phelps: A Prediction Based on Oral Arguments and the Supreme Court's Established Speech-Tort Jurisprudence*, 2010 CARDOZO LAW REVIEW DE NOVO 418.

*State Actors Beating Children: A Call For Judicial Relief*, 42 U.C. DAVIS LAW REVIEW 1165 (2009).

*Intentional Sex Torts*, 77 FORDHAM LAW REVIEW 1051 (2008).

*Elements of Liberty*, 61 S.M.U. LAW REVIEW 1557 (2008).

*Sex Torts*, 91 MINNESOTA LAW REVIEW 769 (2007).

*Wrongful Analysis In Wrongful Life Jurisprudence*, 55 ALABAMA LAW REVIEW 327 (2004).

*Banning Child Corporal Punishment*, 77 TULANE LAW REVIEW 575 (2003).

*Banning Corporal Punishment: A Constitutional Analysis,* 52 AMERICAN UNIVERSITY LAW REVIEW 447 (2002).

*Unconscious Bias and Self Critical Analysis: The Case For A Qualified Evidentiary Equal Employment Opportunity Privilege*, 74 WASHINGTON LAW REVIEW 913 (1999).

*Regulating Violent Pornography*, 43 VANDERBILT LAW REVIEW 125 (1990).

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                    Page 3

## SCHOLARLY IMPACT

Scholarship use and recognition has resulted in top 10% ranking on SSRN, the Social Science Research Network.  The number of views and downloads also has resulted in top statistics on ResearchGate.

Scholarship has received international recognition and has been cited in over 200 law review articles, treatises, federal and state published court opinions (including the United States Supreme Court), practice manuals, and statutory annotations.

### *Cases*

*Osborne v. Ohio,* 495 U.S. 103 (1990) (violent pornography).

*Kohl v. Kohl,* 149 So.3d 127 (Fl. App. 2014) (sex torts).

*Clark v. Children's Memorial Hospital*, 955 N.E.2d 1065, 1091 (Ill. 2011) (wrongful life).

*Nolan v. Memphis City Schools,* 589 F.3d 257, 268, n. 1 (6th Cir. 2009) (corporal punishment).

*Endres v. Endres*, 185 Vt. 63 (2008) (sex torts).

*In re J.A.J.*, 225 S.W.3d 621, 629 (Tex. App. – Houston [14th Dist.], 2006) (corporal punishment).

### *Statutes*

Connecticut General Statutes Annotated, Constitution of the State of Connecticut, Sec. 4, Liberty of speech and the press (effective August 1, 2015) (Editor's Note cites Yale publication concerning speech-tort jurisprudence exclusively).

H.R. 3027: Ending Corporal Punishment in Schools Act of 2011 (introduced repeatedly by Congresswoman Carolyn McCarthy, New York, but not enacted) (publications on corporal punishment were reviewed during drafting stage concerning definition of corporal punishment).

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                                    Page 4

Revised Code of Washington 49.60.180, Unfair practices of employers (effective July 22, 2007) (Editor's Note cites Washington Law Review article concerning unconscious bias exclusively).

### *Treatises & Other Authorities*

Restatement (Third) of Torts, Inten. Torts to Persons, Sec. 101 Battery (Discussion Draft, April 3, 2014) (reporter's notes, intentional sex torts).

American Jurisprudence 2d, Prenatal Injuries, Etc., Wrongful Life, Birth, or Conception, Sec. 54 (Feb. 2016 update) (wrongful life article).

American Jurisprudence 2d, including Proof of Facts 2d Sec. 365, Child Abuse – The Battered Child Syndrome and Proof of Facts 2d Sec. 511, Teacher's Use of Excessive Corporal Punishment (Feb. 2016 updates) (corporal punishment article).

The New Wigmore: A Treatise on Evidence: Evidentiary Privileges, Sec. 6.2.6 Physician-Patient Relationship (2015) (footnote 432, unconscious bias article).

The New Wigmore: A Treatise on Evidence: Evidentiary Privileges, Sec. 7.8.1 General Privilege (2015)  (footnote 21, unconscious bias article).

The New Wigmore: A Treatise on Evidence: Evidentiary Privileges, Sec. 10.3.3 The Contextual Synthesis (2015) (footnote 167, unconscious bias article).

The New Wigmore: A Treatise on Evidence: Evidentiary Privileges, Sec. 6.9.1 Definition of the Various Parties in the Privileged Relations (2015) (footnote 172, unconscious bias article).

American Practice Series, Ch. 5 Dependency Process, Sec. 5:6, Petition (2015) (footnote 27, corporal punishment article).

Washington Practice Series, Rule 501 Privileges – General Rule, Sec. 501.106, Law review articles and other commentary on privileges and nonprivileges (2015) (unconscious bias).

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                           Page 5

*Law Review Citations*

Publications have been cited in many prestigious journals, including the Harvard Law Review, the Yale Law Journal, the Cornell Law Review, the California Law Review, the Northwestern University Law Review, the University of Chicago Law Review, the Texas Law Review, and the University of Pennsylvania Law Review.

## ACADEMIC EMPLOYMENT

Texas Southern University, Houston, Texas. (2000-2020).
Assistant Professor 2000-2004; Associate Professor 2005-2007; Professor 2008-2020; Roberson King Professor of Law, 2011-2016. Teaching areas: torts, property, real estate transactions, constitutional law (first amendment and civil rights), mediation, and law practice management.

University of Houston, Houston, Texas.  (Spring, 2013).
Visiting Professor. Courses: torts and law office management.

Florida State University, Tallahassee, Florida. (Summer & Fall, 2010).
Visiting Professor. Courses: constitutional law and torts.

South Texas College of Law, Houston, Texas. (Fall, 2007).
Adjunct Professor. Course: torts.

University of Denver, Denver, Colorado.  (2003-2004).
Visiting Professor.  Courses: torts, first amendment law, and family law.

## SELECTED PRESENTATIONS, PUBLICATIONS & SCHOLARLY ENDEAVORS

Host, *Counterspeech*, on Revolution Radio, Studio B, Tuesdays 8:00 – 9:00 PM EST (2021 – present). Podcasts of the shows are on the COUNTERSPEECH channel on Rumble.com

Model Legislation Drafter, Five Freedoms Bills concerning COVID relief to ban vaccine mandates, passports, and masks, *inter alia,* for Naomi Wolf and the Daily Clout, dailyclout.io. (2021-present).

Exhibit 2
to Declaration of Deana Pollard Sacks                    Page 6

Host and Executive Producer, *Meet The Professors, A Sociopolitical Educational Talk Show*. Available online at MeetTheProfessors.org. (2014 – 2016).

Plenary Speaker, 2013 National Council on Family Relations 2013 Annual Conference. Conference theme: Well-Being of Children and Youth in Families and Communities. San Antonio, Texas. Available online at DeanaPollardSacks.com. (November 6, 2013).

Presenter, *Implicit Bias-Motivated Torts*, chapter from IMPLICIT RACIAL BIAS ACROSS THE LAW (forthcoming, Cambridge University Press, June, 2012). Harvard Law School. Available on CSPAN and online at DeanaPollardSacks.com. (June 14, 2012).

Panelist, *Implicit Bias-Motivated Torts*, chapter from IMPLICIT RACIAL BIAS ACROSS THE LAW (forthcoming, Cambridge University Press, June, 2012). Law and Society Conference, Honolulu, Hawaii. (June 7, 2012).

Presenter, *Brown v. Entertainment Merchants Association: The Supreme Court's Opinion, the Scientific Data, and the Social Implications.* Presented at CLE luncheon at the Houston City Club. (October 11, 2011).

*Changing Disciplinary Choices by Changing Social Norms*. Paper presented at the Global Summit on Ending Corporal Punishment and Promoting Positive Discipline, Dallas, Texas. Available online at DeanaPollardSacks.com. (June 2, 2011).

*Outlawing School Paddling: The Efficacy of Existing Methods*. Paper presented at the Global Summit on Ending Corporal Punishment and Promoting Positive Discipline, Dallas, Texas. Available online at http://smu.edu/psychology/html/globalSummit.html. (June 2, 2011).

Panelist, *Free Speech and the Role of Torts*, Free Speech and Civil Discourse in the 21st Century, Charleston School of Law, Charleston, North Carolina, February 18, 2011.
*Children's Developmental Vulnerability & The Roberts Court's Child-Protective Jurisprudence*. Paper presented at the Constitutional Law Discussion Forum, University of Louisville, Louisville, Kentucky. (December 15, 2010).

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                    Page 7

Panelist, *Schwarzenegger v. Entertainment Merchants Association*, American Constitution Society Supreme Court Preview, Florida State University, Tallahassee, Florida. One of three faculty panelists chosen by the students. (September 30, 2010).

*The Roberts Court, The First Amendment and Children.* Research presented at the Southeastern Association of Law Schools 63rd Annual Meeting, Palm Beach, Florida. (August 2, 2010).

*School Paddling: The State of American* Law, United States, Briefing for the Human Rights Council, Universal Periodic Review, 9th Session, 2010-04-19. Available online at http://lib.ohchr.org/HRBodies/UPR/Documents/session9/US/EPOCH_USA.pdf. (2010).

*Mass Media and Children: Revisiting the Balance of Rights.* Paper presented as part of Michigan State University's 2009-2010 Distinguished Speaker Series, East Lansing, Michigan. (March 24, 2010).

*Ethics of Dogma, Ethics of Greed: How Public and Private Actors are Ignoring Science and Depriving American Youth of Life, Liberty, and Happiness.* Paper presented at Children At Risk's 2009 Children's Law Symposium, Houston, Texas. Paper published as part of the CLE materials and is on file with the author. (October 16, 2009).

Panelist, *Law and Pornography.* Southeastern Association of Law Schools 62nd Annual Meeting, Palm Beach, Florida. (August 3, 2009).

*Reforming American Sex Tort Law.* Paper presented at the 1st Global Conference, Good Sex Bad Sex: Sex Law, Crime and Ethics, Budapest, Hungary. Paper published on the Inter-disciplinary.net website and is available at http://www.inter-disciplinary.net/wp-content/uploads/2009/04/gsbs1sacks.pdf. (May 5, 2009).

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                                    Page 8

**SERVICE**

California State Bar. Drafted model torts questions and answers. (2016 - 2019).

Mentor to Texas Challenge Academy cadet. The T.C.A. is a Texas National Guard supported military high school for drop outs. The academy gives teens a second chance to start their lives on the right path. Each cadet requires a mentor. (2016).

Volunteer, Operation Safe Canyons, Los Angeles County. (2014-2016).

Produced and hosted thirty minute radio shows on KPFT's Open Journal. Issues concern children, society, first amendment law, and tort law. (2011-2013).

Chair of the Legal Committee and Advisory Board Member of EPOCH-USA (End Physical Punishment of Children, USA) and Board Member of PTAVE (Parents and Teachers Against Violence in Education) (2005-2008).

Worked on original draft, House Bill 5628 (September, 2009). The bill proposes to deny funding to schools that continue to discipline students with corporal punishment. The bill was introduced by Carolyn McCarthy (NY) in 2010 and was reintroduced, but has not been enacted. The bill is currently titled H.R. 3027: Ending Corporal Punishment in Schools Act of 2011.

Drafted social science section of amicus brief, *Hunter v. Hunter,* 484 Mich. 247, 771 N.W.2d 694 (2009). Argued that the trial court's finding that the children's custodians' use of corporal punishment did not cause lasting injury was erroneous, and provided the court with research on the harmful effects of corporal punishment. The biological mother on whose behalf the amicus brief was filed succeeded in obtaining remand of the "best interests" analysis that supported the trial court's termination of her parental rights and ultimately regained custody of her children.

Reviewed draft bills and/or testified before legislative committees regarding bills proposed by Alma Allen in Texas and James Marzilli in Massachusetts to ban public school paddling and parental spanking, respectively. (2005).

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                    Page 9

## OTHER LEGAL EXPERIENCE

The *Elected* Los Angeles Charter Reform Commission, Los Angeles, California (1998).

Policy analyst. Researched and analyzed issues relating to city government policy, including balance of power issues and constitutional issues, under the direction of Erwin Chemerinsky. The new charter was passed by the Los Angeles voters on June 8, 1999.

Davidson, Czeisler, Kilpatric & Zeno, Kirkland, Washington (1995-1997). Litigation associate in general practice, employment, and real estate firm.

Law Offices of Richard A. Love, Los Angeles, California (1992-1994). Litigation associate in plaintiff's employment discrimination firm.

Levin, Stein & Chyten, Los Angeles, California (1992). Associate attorney in litigation department.

Greenfield & Chimicles, Los Angeles, California (1991). Associate attorney in Pennsylvania-based plaintiffs' class action firm.

Erwin, Cohen & Jessup, Beverly Hills, California (Summer, 1989 & 1990). Summer associate and associate attorney in litigation department.

## PROFESSIONAL ASSOCIATIONS

Admitted to the California Bar and the Ninth Circuit (1989).

Admitted to the Washington Bar. (1994).

Admitted to the Fifth Circuit and United States Supreme Court (2020).

## SELECTED MEDIA APPEARANCES

America, Can We Talk? With Debbie Georgatos. Dallas-based podcast on politics and news. Discussed Jeffrey Epstein cases and reported suicide. (March 10, 2020).

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                    Page 10

CW39 The Morning Dose. Discussed Harvey Weinstein verdict on Houston-based morning talk show. (February 25, 2020).

KPFT 90.1 Radio for Peace. Produced and hosted 30 minute radio shows on Open Journal segment, concerning children's issues, social issues, bullying, free speech, constitutional law, and tort law. (2011-2013).

*Let's turn off video games that inflict harm on kids*. Houston Chronicle Op Ed. (July 17, 2011, Page B 9).

*How Protected Is Free Speech*? Article, WorldPress.org. Available online at http://www.worldpress.org/Americas/3649.cfm. (November 7, 2010).

TXA 21 News/CBS 11 News (Dallas). Appeared live to debate whether corporal punishment should be reinstated in the Dallas Independent School District. Filmed in Tallahassee, Florida. (May 12, 2010).

MSNBC (New York). Appeared live on Dan Abrams's show to debate James Marzilli's proposed Massachusetts legislation to prohibit parental spanking. Filmed in Houston, Texas. (November 28, 2007).

Fox News Channel (New York). Appeared live on various virtual roundtable national news segments. Filmed in Houston, Texas. (2005-2008).

New England Cable News Network (Boston). Debated Chester Darling live on Amanda Rosseter's talk show regarding proposed spanking bill, religious rights, and parental rights. Filmed in Boston, Massachusetts. (January 14, 2005).

KUSA Channel 9 News (Denver). Appeared on "@ISSUE" news segments concerning children's rights, liability for sexual disease, and unconscious racial bias relating to Kobe Bryant's rape charges in Eagle County. Filmed in Denver, Colorado. (2003-2004).

KRIV Fox 26 News at Nine (Houston). Various appearances relating to legal topics such as civil liability for transmitting a sexual disease, the Bush v. Gore lawsuit, and the Americans with Disabilities Act. Filmed in Houston, Texas. (2000-2010).

*Spare the rod and spoil regressive spanking bill*. Houston Chronicle Op Ed. (February 1, 2005, Page B7).

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                              Page 11

**REFERENCES**

Dean Erwin Chemerinsky, U.C. Berkeley School of Law (510) 642-6483.
Professor John Brittain, University of D.C. School of Law (202) 274-6443.
Professor Martina Cartwright, Texas Southern University (713) 927-1195.
Professor Alfred Brophy, University of Alabama School of Law (405) 209-5781.

Additional references available upon request.

EXHIBIT 2
TO DECLARATION OF DEANA POLLARD SACKS                              Page 12